514 A.2d 576

**Steven JONES, Appellant,**

v.

**The TRAVELERS INSURANCE COMPANY and Metro Transportation Company t/a Yellow Cab and Northwestern National Insurance Company.**

Superior Court of Pennsylvania.

Argued March 6, 1986.

Filed Aug. 22, 1986.

214

T. Jonathan Hankin, Philadelphia, for appellant.

A. Richard Feldman, Philadelphia, for appellee.

Before CAVANAUGH, BECK, and JOHNSON, JJ.

BECK, Judge:

Appellant Steven Jones filed a complaint in assumpsit against appellee Travelers Insurance Company (Travelers) alleging that on January 18, 1982 he had been injured in a collision with an uninsured motorist while riding as a passenger in a taxicab owned and operated by Metro Transportation Company, t/a Yellow Cab Company ("Yellow Cab"). Jones alleged that he was himself uninsured, and that he had filed claims for both basic loss benefits [1] and uninsured motorist benefits [2] with the Pennsylvania Assigned Claims Plan ("Plan").[3] This appeal involves only Jones's claim for uninsured motorist benefits.

The complaint further stated that the Plan had designated Travelers as the servicing insurance company for payment of Jones's basic loss benefits. In addition, the complaint asserted that Travelers denied Jones's claim for uninsured motorist benefits.

1. *See* Section 103 of the Pennsylvania No-fault Motor Vehicle Insurance Act ("No-fault Act"), Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.103. The No-fault Act has been replaced by the Motor Vehicle Financial Responsibility Law, Act of February 12, 1984, P.L. 26, No. 11, *as amended by* Act of February 12, 1984, P.L. 53, No. 12, effective October 1, 1984.

2. *See* Uninsured Motorist Act, Act of August 14, 1963, P.L. 909, § 1, *as amended by* Act of December 19, 1968, P.L. 1254, No. 397, *as amended,* 40 P.S. § 2000.

3. *See* 40 P.S. § 1009.108.

In its answer to Jones's complaint Travelers in New Matter denied liability for the uninsured motorist benefits and stated that if anyone was liable for such benefits it would be either Yellow Cab as a self-insurer, or Northwestern National Insurance Company ("Northwestern"), the company Travelers apparently understood to be Yellow Cab's No-fault carrier.

Travelers then filed an additional defendant complaint against Northwestern and Yellow Cab, alleging that one of the two was solely liable for Jones's uninsured motorist benefits. Yellow Cab and Northwestern filed a joint Answer and New Matter stating that 1) Guaranty National Insurance Company ("Guaranty") was Yellow Cab's insurer; and 2) that Yellow Cab had exercised its right to reject uninsured motorist coverage in its policy of insurance with Guaranty pursuant to Section (a) of the Uninsured Motorist Act. *See* 40 P.S. § 2000(a)(2).

The case proceeded to compulsory arbitration where the arbitrators found in favor of Jones and against Yellow Cab in the amount of $5,000.00, and found Travelers and Northwestern not liable. Yellow Cab then appealed the arbitrator's decision to the trial court. Travelers filed a Motion for Judgment on the Pleadings. The court granted the motion and issued an order dismissing Travelers from the case and holding Yellow Cab solely liable to Jones for any uninsured motorist benefits to which he might be entitled. This appeal followed.

The sole issue before us is whether the trial court properly granted judgment on the pleadings after determining as a matter of law that Travelers, as the designated assigned claims carrier, was not liable for Jones's uninsured motorist benefits.[4]

---

**4.** Appellant framed the issue as follows:

　　1. Whether the lower court's order granting a Motion for Judgment on the Pleadings should be reversed where the indeterminate state of relevant Pennsylvania law precludes the showing that the moving party is entitled to judgment as a matter of law?

██ Initially we note that to determine the propriety of awarding judgment on the pleadings, we must accept as true all well-pleaded statements of fact of the party against whom the motion is granted and consider against him only those facts that he specifically admits. *West Penn Administration Inc. v. Pittsburgh National Bank,* 289 Pa.Super. 460, 467, 433 A.2d 896, 900 (1981) (citations omitted); *Zelik v. Daily News Publishing Co.,* 288 Pa.Super. 277, 431 A.2d 1046 (1981); *see also Wojciechowski v. Murray,* 345 Pa.Super. 138, 497 A.2d 1342 (1985). The parties cannot be deemed to admit either conclusions of law or unjustified inferences. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); *West Penn,* 289 Pa.Super. at 467, 433 A.2d at 900.

██ We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise. *Gallo v. J.C. Penney Casualty Insurance Co.,* 328 Pa.Super. 267, 476 A.2d 1322 (1984); *see also Bata v. Central-Penn National Bank of Philadelphia,* 423 Pa. 373, 224 A.2d 174 (1966), *cert. denied,* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 433 (1967); *Wojciechowski,* 345 Pa. Super. at 139, 497 A.2d at 1343. In conducting this inquiry, the court should confine its consideration to the pleadings and documents attached thereto. *Gallo,* 328 Pa.Super. at 270, 476 A.2d at 1324.[5]

██ Under the standards governing motions for judgments on the pleadings the trial court in this case could consider only the factual allegations made in Jones's complaint because these were the only facts specifically admit-

2. Whether the lower court erred as a matter of law by holding that Appellee, Travelers Insurance Company, is not liable to appellant for uninsured motorist benefits?

5. Pa.R.C.P. No. 1034 phrases the standards for a motion for judgment on the pleadings as follows:
(a) After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings.
(b) The court shall enter such judgment or order as shall be proper on the pleadings.

ted by him.[6] *See, e.g., Aughenbaugh v. North American Refractories Co.,* 426 Pa. 211, 231 A.2d 173 (1967); *Wojciechowski,* 345 Pa.Super. at 139, 497 A.2d at 1343; *Gallo,* 328 Pa.Super. at 270, 476 A.2d at 1324; *Zelik,* 288 Pa.Super. at 278, 431 A.2d at 1047; *Enoch v. Food Fair Stores,* 232 Pa.Super. 1, 331 A.2d 912 (1974). Consequently, the court could not take into account the facts and conclusions of law asserted by Travelers in its Answer and New Matter or those contained in the pleadings exchanged between Travelers and the additional defendants.

■ Based on the allegations contained in appellant Jones's complaint, we find that the trial court properly concluded as a matter of law that Travelers as an assignee under the Plan could not be made to bear the cost of Jones's uninsured motorist benefits. The law governing the issue is not, as appellant claims, indeterminate. The complaint stated that Jones had been a passenger in a Yellow Cab when he was injured in the collision with the uninsured motorist. As we will elaborate upon below, when a common carrier such as Yellow Cab is involved in an uninsured motorist claim, the Uninsured Motorist Act and the regulations governing common carriers [7] clearly dictate the following: either the common carrier's insurer must provide uninsured motorist coverage, or, the common carrier itself must be presumed to have adopted the status of a self-insurer, thereby choosing to commit its own funds for the payment of benefits to its passengers injured at the hands of uninsured motorists. The imposition of liability on either entity would preclude an obligation on the part of the Assigned

6. Because appellant Jones was not required to and did not file a reply in response to Travelers' Answer and New Matter, none of the allegations contained in Travelers' Answer can be deemed admitted by Jones.

7. As a motor carrier Yellow Cab is under the aegis of the Public Utility Commission, which has authority to prescribe insurance requirements for motor carriers in order to protect the public. *Johnson v. Yellow Cab Co.,* 456 Pa. 256, 317 A.2d 245 (1974), *rev'd on other grounds, Modesta v. Septa,* 503 Pa. 437, 469 A.2d 1019 (1983); *see also* Section 512 of the Public Utility Code, Act of July 1, 1978, P.L. 598, No. 116 § 1, 66 Pa.C.S.A. § 512; 52 Pa.Code. § 29.104.

Claims Plan insurer to afford uninsured motorist benefits. *See Fairbanks v. Travelers Insurance Co.*, 337 Pa.Super. 39, 46 n. 7; 486 A.2d 469, 472 n. 7 (1984).

The Uninsured Motorist Act is based on public policy considerations:

> *No motor vehicle liability policy of insurance* insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle *shall be delivered or issued for delivery in this State* with respect to any motor vehicle registered or principally garaged in this State, *unless coverage is provided therein or supplemental thereto in limits for bodily injury or death ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* because of bodily injury, sickness or disease, including death resulting therefrom....

40 P.S. § 2000(a) (emphasis added).

■ As our courts have often stated, the Act's scope is broad and its purpose is remedial: "to afford financial recompense to persons who receive injuries ... solely through the negligence of motorists, who, because they are uninsured and not financially responsible cannot be made to satisfy a judgment." *Johnson v. Concord Mutual Insurance Co.*, 450 Pa. 614, 619, 300 A.2d 61, 64 (1973) (citation omitted); *Patrick v. Cherokee Insurance Co.*, 354 Pa.Super. 427, 431, 512 A.2d 24, 26 (1986); *see also Modesta*, 503 Pa. at 437, 469 A.2d at 1019. In this way, the Act provides "monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injuries...." *Johnson v. Concord*, 450 Pa. at 619, 300 A.2d at 64 (citation omitted); *Boyle v. State Farm Mutual Insurance Co.*, 310 Pa.Super. 10, 21, 456 A.2d 156, 162 (1983). Because of its public policy concerns, we must construe the Act liberally to enable it to achieve its purpose. *Johnson v. Concord*, 450 Pa. at 619, 300 A.2d at 64; *Patrick*, 312 A.2d at 26;

*Novoseller v. Royal Globe Insurance Co,* 317 Pa.Super. 217, 463 A.2d 1163 (1983).

The Uninsured Motorist Act attempts to achieve its aims by specifically mandating uninsured motorist coverage in all "motor vehicle liability *polic[ies] of insurance.*" 40 P.S. § 2000(a) (emphasis added). The Pennsylvania Supreme Court has expanded the expressed scope of the statute to include those owners of motor vehicles who under law are allowed to self-insure and therefore have no "policy of insurance." [8] Thus, a motor vehicle owner's obligation to provide uninsured motorist benefits is not tied to the actual purchase of such coverage in an insurance policy. *Modesta,* 503 Pa. at 441, 469 A.2d at 1022. Despite its mandate of uninsured motorist coverage in all policies of insurance, the Uninsured Motorist Act allows common carriers like Yellow Cab to reject uninsured motorist *coverage* in conjunction with their policies in certain limited circumstances:

> (2) An ... operator of any ... motor vehicle operated for the carriage of ... passengers for hire ... shall have the right to reject such coverage in writing, in which event, such coverage need not be provided....

40 P.S. § 2000(a)(2), *construed in Johnson v. Concord,* 450 Pa. at 614, 300 A.2d at 61; *Patrick,* 512 A.2d at 26–27.

The Uninsured Motorist Act therefore delineates three categories of common carriers: 1) those who like SEPTA are authorized to self-insure for all their liability needs; 2) those who accept uninsured motorist coverage in their policies of insurance and pay the premiums for it; and 3) those who reject uninsured motorist coverage in their insurance policies. Appellant Jones argues that when a common carrier rejects uninsured motorist coverage it is not obligated to provide the benefits required of all other common

**8.** The No-fault Act makes insurance mandatory for all owners of motor vehicles, but allows self-insurance subject to the approval of the insurance commissioner. *See* 40 P.S. § 1009.104(a)(b). Similarly, as the court in *Modesta* observed, the Legislature granted SEPTA the authority to self-insure. 503 Pa. at 441 n. 2, 469 A.2d at 1022 n. 2. As a common carrier Yellow Cab may also self-insure if it meets the criteria established by the Public Utility Commission. 52 Pa. Code § 29.104(d).

carriers. As a result, Jones maintains that Travelers should not be dismissed from the suit, because Jones will have no other source of uninsured motorist benefits if at trial Yellow Cab is shown to have rejected such coverage.

■ We cannot accept appellant's interpretation of the Uninsured Motorist Act. The Act does not state that a common carrier that rejects uninsured motorist coverage is relieved of the responsibility borne by all other motor vehicle owners in Pennsylvania, whether insured or self-insured, of providing for uninsured motorist benefits. The statute merely provides that a common carrier need not purchase uninsured motorist coverage as part of its automobile liability policy; i.e. the common carrier may be self-insured.

The court in *Modesta* explained its extension of the obligations of the Uninsured Motorist Act to include self-insurers with the following:

> [T]he sole purpose of self-insurance is to relieve self-insurers of the burden of expending their assets on insurance premiums; self-insurance is not a means by which self-insurers may avoid the claims of those individuals for whose protection the insurance laws have been enacted.

503 Pa. at 441, 469 A.2d at 1022. Similarly, we find that in light of the broad remedial purpose of the Uninsured Motorist Act, allowing a common carrier to reject uninsured motorist coverage is simply another way of saying that the carrier may choose to self-insure for uninsured motorist benefits:

> Thus, while other motorists are required to expend funds to obtain coverage from a licensed insurance carrier, a common carrier is permitted to avoid paying insurance premiums to obtain such coverage. Coupled with this privilege, however, the common carrier must assume the burden of providing benefits from its own resources.

*Patrick v. Cherokee Insurance Co.*, 11 Phila. 413, 417 (1984) (dicta), *aff'd on other grounds, Patrick*, 512 A.2d at 26–27.

Appellant's argument that the statute's rejection provisions deny uninsured motorist benefits to passengers injured in vehicles owned by common carriers implies a harsh and absurd result which we cannot allow. *See* 1 Pa.C.S.A. § 1922(1) *construed in Fireman's Fund Ins. Co. v. Nationwide Mutual Ins. Co.*, 317 Pa.Super. 497, 464 A.2d 431 (1983).

Common carriers presumably have a high incidence of uninsured motorist claims since their vehicles carry numerous passengers and those passengers are unlikely to maintain automobile insurance. *See Modesta*, 503 Pa. at 443 n. 5, 469 A.2d at 1023 n. 5 ("It is precisely because they do not own ... transportation that they must rely upon public transportation providers....").  The Legislature could hardly have intended to deprive so many people of the Act's protection.[9]  Instead, given the expected frequency of uninsured motorist claims, the Legislature clearly intended to afford some latitude to common carriers by permitting them to self-insure rather than requiring them to bear the burden of insurance premiums.

■ The regulations governing common carriers support our conclusion that a passenger on a common carrier that has rejected uninsured motorist coverage could recover such benefits from the common carrier.  The Public Utility Commission's regulations require all common carriers to provide for the compensation of claims by individuals injured on or by the common carrier, either through insurance or self-insurance.  52 Pa.Code § 29.104(a)(d).[10]  The Com-

9. When the Legislature enacted the Uninsured Motorist Act in the 1960's it could not have assumed that common carrier passengers could obtain uninsured motorist coverage through the Plan, which was not created until 1975 pursuant to the No-fault Act.  Thus, as Travelers correctly observed in its brief on appeal, appellant Jones's argument must assume that the Legislature intended to deny uninsured motorist benefits to common carrier passengers who did not have their own insurance policies.  As noted above, we cannot accept such a conclusion.

10. A lawfully promulgated administrative regulation is as valid and binding as the statute under which it was adopted. *Tubner v. State*

mission made no exceptions to the rule requiring common carriers to maintain insurance coverage, regardless of whether or not the injuries in question gave rise to uninsured motorist claims:

> No common carrier shall engage in intrastate commerce ... until there has been filed ... and approved ... a certificate of insurance ... *to provide for the payment of any final judgment recovered against the insured for bodily injury ... to ... any person ...* resulting from the operation, maintenance, or use of a motor vehicle in the insured certificated service.

52 Pa.Code § 29.104(a) (emphasis added).

We conclude that the trial court acted properly by granting Travelers's Motion for Judgment on the Pleadings and by dismissing Jones's complaint against Travelers.

Accordingly, we affirm the trial court's order.

*Farm Mutual Ins. Co.,* 496 Pa. 215, 219 n. 10, 436 A.2d 621, 623 n. 10 (1981).