535 A.2d 648

**KEYSTONE AUTOMATED EQUIPMENT CO., INC., Appellant,**

**v.**

**RELIANCE INSURANCE CO.**

Superior Court of Pennsylvania.

Argued Sept. 21, 1987.

Filed Jan. 6, 1988.

Michael M. Baylson, Philadelphia, for appellant.

K. Charles Gudenas, Philadelphia, for appellee.

Before CIRILLO, President Judge, and BECK and TAMILIA, JJ.

CIRILLO, President Judge:

In January of 1983, Texaco International Trader, Inc. and Societe de Futs et Emballage (Texaco) sued Keystone Automated Equipment Company (Keystone) alleging that Keystone was negligent in the selling and installation of equipment that was to be used to produce oil drums. That equipment was to be installed in a plant in Abidjan, Ivory Coast, Africa. The contracts in question provided that Keystone would sell, install, test and otherwise provide services for the proper installation, operation and maintenance of that equipment. The complaint alleged that Keystone breached contracts to deliver the equipment and complete the work by June 19, 1981, that the equipment was defective and inoperable, that Keystone failed to repair or replace it, and that Keystone was guilty of negligence in the manufacturing, production, transportation, design, engineering, inspection, and maintenance of the equipment.

Keystone and Texaco settled out of court for the sum of one million dollars. Keystone had notified Reliance, its insurer, of the suit and requested that it defend the suit and provide coverage. Reliance refused claiming that the property damage was not covered because, *inter alia,* the damage did not occur within the policy territory. Keystone had previously purchased from Reliance Insurance Company a comprehensive insurance policy under which it agreed to indemnify Keystone for all personal injuries, property damage, fire losses, and advertising injuries caused by an occurrence during the policy period and within the policy territory. "Policy territory" is defined by the policy as "the United States of America, its territories or possessions, or Canada." "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the insured."

Keystone then brought suit in the Court of Common Pleas of Philadelphia County to recover the amount of the judgment from Reliance, along with the costs of defending the suit. The court granted Reliance's motion for judgment

on the pleadings and dismissed the complaint. The court found as a matter of law that the actions alleged by Texaco did not occur within the policy territory so that Reliance was under no obligation to either defend or indemnify Keystone. Keystone had filed a motion for summary judgment; the court did not consider that motion.

The appellant argues on appeal that the trial court erred in granting a motion for judgment on the pleadings because: (1) the fact that the coverage claimed by Keystone is barred under a policy exception is disputed in the pleadings, and Reliance has failed to bear the burden of proof on that issue; (2) the coverage exclusion is an affirmative defense upon which Reliance bears the burden of proof; (3) the decision in *D'Auria v. Zurich Insurance Company*, 352 Pa.Super. 231, 507 A.2d 857 (1986), supports Keystone's contention that the claims against Reliance are potentially within the coverage of the policy; and (4) case law shows that the insurer must provide a defense and indemnify claims brought against Keystone. We disagree with appellant's arguments, and affirm the trial court's order.

■ In reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must determine if the action of the trial court was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. *Vogel v. Berkley*, 354 Pa.Super. 291, 296, 511 A.2d 878, 880 (1986). The appellate court must confine its consideration to the pleadings and relevant documents, *id.*, accept as true all well pleaded statements of fact by the party against whom judgment is granted, in this case, the insured, and consider against him only those facts that he specifically admits. *Jones v. Travelers Insurance Company*, 356 Pa.Super. 213, 216, 514 A.2d 576, 578 (1986). Judgment on the pleadings may be granted only where the moving party's right to succeed is certain and the case so free from doubt that a trial would clearly be a fruitless exercise. *Id.*

In the instant case, Keystone contends that Reliance was bound to defend it under the policy. It is clear that in order to determine whether the insurer is obligated to defend an insured, the reviewing court must decide whether, if the facts alleged in the complaint are proven to be true, the policy would provide coverage. *State Auto Insurance Company v. Kufahl,* 364 Pa.Super. 230, 232–236, 527 A.2d 1039, 1040–1041 (1987). After review of the complaint in the instant case, we find that even if the facts as alleged by Keystone were true, the policy would not provide coverage. From this, we find that judgment on the pleadings was proper, since insurer Reliance's right to succeed was certain and the case free from doubt.

In the instant case, appellant argues first that the court of common pleas did not accept as true all the facts pleaded by it. Specifically, appellant complains that the court erred by failing to accept as true its answer to Paragraph 33 of Reliance's New Matter. Paragraph 33 of Reliance's New Matter states:

33. Claims asserted by Texaco against Plaintiff in the Underlying Action were not within the terms and conditions of the Policy and they were specifically excluded from coverage by pertinent exclusions and limitations set forth in the Policy.

Keystone attempted to deny these allegations in its Answer to New Matter of Defendant:

33. Denied. Claims asserted by Texaco against plaintiff in the underlying action required defendant to defend plaintiff and were not specifically excluded from coverage by pertinent exclusions and limitations set forth in the insurance policy issued by defendant to plaintiff.

Keystone argues that the court should have accepted its denial as true under the rules for granting judgment on the pleadings, and therefore judgment should have been denied. Reliance contends that the court was entitled to accept as true all facts and reasonable inferences to be drawn from those facts. It argues that Keystone's denial was not a

pleading of fact, but rather an inference derived from the pleaded facts.

In considering whether or not to grant judgment on the pleadings, the court may not take into account conclusions of law or unjustified inferences asserted by either party. *Travelers Insurance Company,* 356 Pa.Super. at 216, 514 A.2d at 578. Neither the allegations of Keystone nor of Reliance may be accepted as facts here. Keystone's allegations are conclusory. The disposition of this case revolves around the question of whether or not the suit in question was covered by the policy. The trial court made no error in refusing to accept Keystone's allegations that the policy did in fact cover the underlying suit.

Appellant also argues that the coverage exclusion Reliance depends upon is an affirmative defense upon which Reliance bears the burden of proof. Under Pennsylvania law, an insurer must bear the burden of proof that an exclusion applies. *Miller v. Boston Insurance Company,* 420 Pa. 566, 570, 218 A.2d 275, 277 (1966). *See also, Myrtil v. Hartford Insurance Company,* 510 F.Supp. 1198, 1200–1201 (E.D.Pa.1981) (where an insurer seeks to disclaim under an insurance policy by invoking an exclusionary provision, it bears the burden of proving the exclusion is applicable to the case). Keystone argues that Reliance could not meet this burden on the pleadings. Considering the pleadings, it is clear that Keystone has alleged that its policy provides coverage, and that Reliance has alleged that the policy does not. The pleadings in the underlying case, properly brought to the attention of this court, must themselves be considered to determine if the case is so free from doubt that no trial is necessary, that is, if Reliance has carried its burden on the pleadings alone. The controlling question then, is whether or not the event or the effect of the event is the "occurrence" which is properly covered by the insurance policy. In other words, is Keystone covered by the policy if the events which led to the damage occurred within the policy territory, but the damage occurred without.

This is the question with which the remaining two issues Keystone raises on appeal are concerned. Keystone claims first that the trial court misread *D'Auria v. Zurich Insurance Company*, 352 Pa.Super. 231, 507 A.2d 857 (1986), on which that court relies, and that *D'Auria* in fact supports its own contentions. Keystone then argues that case law from other jurisdictions supports its claim that the determination of whether the occurrence happened within the policy territory is made by determining where the events leading to the damages occurred rather than where the damages arose.

In *D'Auria*, this court considered the question of when an "occurrence" had happened. D'Auria was a pediatrician who was sued for malpractice by Gregory Egnot, a former patient. Egnot had been treated by D'Auria from his birth in 1957 until 1963; in 1979 he suffered from renal failure that he claimed was caused by D'Auria's negligence during and after the time he was his patient. D'Auria, in turn, brought suit against three insurance companies claiming that they had a duty to defend the malpractice action. None of the companies insured D'Auria during the time that Egnot was his patient. The court found no duty to defend on the part of any of the companies.

The decision turned on the question of what constituted an "occurrence". The court held that the determination of when the "occurrence" had happened should be based on the time when the injurious effects first manifested themselves. *Id.*, 352 Pa.Superior Ct. at 238–39, 507 A.2d at 861. "Thus an occurrence happens when the injury is reasonably apparent, not at the time the injury occurs. The cause and the injury may happen at very distinct time periods." *Id.*, 352 Pa.Superior Ct. at 239, 507 A.2d at 862. Further, this court pointed out that courts in other jurisdictions have indicated that an "occurrence" cannot happen until the injury or damage is irremediable, and it stated that there was no reason to wait until the injury was a "certain proposition" to pinpoint the time of occurrence. *Id.*

Appellant argues that the trial court erred in applying *D'Auria* to the case at bar because the *D'Auria* court was considering *time* of the "occurrence" as opposed to *place*. The appellant also points out that the court used two separate tests to determine the number of "occurrences" and the timing of those "occurrences." For the former, the court applied the 'cause' test, which considers if one proximate, uninterrupted and continuing cause existed which resulted in the damage, *id.*, 352 Pa.Superior Ct. at 236–37, 507 A.2d at 860, and for the latter, the 'effect' test, which asks when the injurious effects took place. *Id.*, 352 Pa.Superior Ct. at 238, 507 A.2d at 861. The appellant contends that if two different tests are to be utilized in these two different situations, then the 'effect' test is not necessarily the test which should be used to determine place of occurrence. Appellant, however, offers no reasons for its contention. We note, as did Judge McFadden in his dissent in *Shields v. Hiram C. Gardner, Inc.*, 92 Idaho 423, 444 P.2d 38 (1968), that both the territorial condition as well as the policy period are established in the same paragraph of the policy. We agree that the term "occurrence", then, should be construed similarly in interpreting both conditions. *See id.* at 432, 444 P.2d at 47 (McFadden, J., dissenting).

In any case, following the reasoning of the Third Circuit Court of Appeals, it seems clear that the 'effect' test is applicable to a determination of place of occurrence as well as of time. In *Appalachian Insurance Company v. Liberty Mutual Insurance Company*, 676 F.2d 56 (3rd Cir.1982), the third circuit held that the time at which an "occurrence" occurs must be determined by reference to when the injurious effects of the occurrence took place. *Id.* at 61–2. The court reached this decision by considering the reasonable expectations of an insured in purchasing the policy:

> Our adoption of the effect test for determining when an occurrence took place is dictated by the reasonable expectations of the insured in purchasing a policy of this type ... Liberty could reasonably expect that it would be indemnified for damages paid on account of liability in-

curred during the policy period. Since injury is prerequisite to liability, Liberty reasonably expected to be indemnified for injuries occurring during the policy period. The expectation is evident in the language of the policy which specifically defines occurrence as something that results in injuries during the policy period.

*Id.* at 62 (citations omitted). The court was concerned with making the insurer responsible for a liability for which it had not contracted. Clearly, the same considerations apply to a determination of place. Again, the reasonable expectations of the insured are that it be indemnified for occurrences happening within the policy territory. Application of the 'cause' test, which appellant seems to advocate, would increase its coverage beyond the coverage for which it had paid. As appellee Reliance points out, if Keystone had wanted world-wide coverage, it could have paid a higher premium to obtain it.

Appellant further argues that *D'Auria* may be read to support its proposition that the "occurrence" happened when the events which caused the damages occurred. The appellant claims that a factual determination of when the injurious effects would have manifested themselves must be made; it claims that it is possible they may have manifested themselves in Philadelphia where the negligent acts were performed. If this is so, then the property damage caused by those acts would fall within the policy coverage. The appellant quotes the *D'Auria* court: "[t]he party alleging the negligence need not have actually discovered the injurious effects at the time they first manifested themselves...." *D'Auria*, 352 Pa.Super. at 238, 507 A.2d at 861.

Appellant Keystone places great emphasis on this language in arguing that the damage caused by its negligence could potentially have manifested itself in Philadelphia. It points out that the equipment in question was to be shipped F.O.B. Philadelphia, and that many of its obligations were to be discharged there: rebuilding, repainting and putting the equipment in "first class operating condition," packing

the equipment in ocean-going containers, and having the equipment inspected. Appellant, however, has failed to quote the *D'Auria* court's entire statement:

"The party alleging the negligence need not have actually discovered the injurious effects at the time they first manifested themselves ... an "occurrence during the policy period" takes place when both the accident and the resulting injury occur within the policy period ... *when injury is reasonably apparent, not when the cause of the injury occurs.* The cause and the injury may happen at very distinct time periods."

*Id.,* 352 Pa.Superior Ct. at 238–39, 507 A.2d at 861–2 (emphasis added). The cause and the injury may also occur at very distinct places, both within and without the policy territory.

We read *D'Auria* to hold that the time when the damages arise, that is, the time of ultimate injury, is the time that must be examined to determine if the claim falls within the policy limitations. Although that court did state that it saw no reason to wait to pinpoint the occurrence until the ultimate injury became a "certain proposition", *id.* at 240, 507 A.2d at 862, it was concerned with the ultimate injury, in that case the deterioration of the kidneys. Further, as the Third Circuit stated in *Appalachian Insurance Company,* " 'There can be no question but that the aspect of the occurrence which must take place within the policy period ... is the "result", that is, the time when the accident or injurious exposure produces personal injuries.' " *Appalachian Insurance Company,* 676 F.2d at 62 (citations omitted). *See, e.g., Draft Systems, Inc. v. Alspach,* 756 F.2d 293, 297 (3rd Cir.1985) (time of receipt of defective tubing was rejected as the pertinent time under the policy terms). From this, we have no difficulty in deciding that the same result must be reached in considering the place where the damage occurred. The property damage here clearly could not occur until the equipment had been install-

ed in the plant in Africa,[1] that is, until the time of the ultimate injury.

Keystone also argues that case law from other jurisdictions should be adopted by Pennsylvania in determining the proper test for determining the policy territory coverage of an insurance policy. Keystone cites cases for the proposition that where the language of the policy is susceptible of two different constructions it should be construed strictly against the insurer. Because the policy first limits the coverage to the "policy territory," ("This insurance applies only to personal injury, advertising injury or property damage which occurs during the period of insurance and within the policy territory"), and then defines occurrence as "[a]n accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the insured," Keystone argues that the policy confuses damages with the occurrence that would create liability. We fail to understand this argument. We find no confusion here. Clearly, as discussed above, the occurrence giving rise to liability is the actual injury to the person or the property.

Other courts construing similar policies have had little difficulty in separating damages from the events which give rise to damages. *See, e.g., Appalachian Insurance Company v. Liberty Mutual Insurance Company*, 676 F.2d 56 (3rd Cir.1982); *D'Auria v. Zurich Insurance Company*, 352 Pa.Super. 231, 507 A.2d 857 (1986). In *Hagen Supply Company Corp. v. Iowa National Mutual Insurance Company*, 331 F.2d 199 (8th Cir.1964), Hagen Supply Corporation was sued by a minor injured when a tear gas device sold by Hagen to another minor was discharged. The suit alleged that Hagen acted negligently and in viola-

1. Keystone also argues that damage to the equipment could have occurred in Philadelphia, and so the claim would come under the policy coverage. We must agree with appellee's construction of the policy. As appellee points out, the policy denies coverage to the named insured's products, that is, those products manufactured, sold handled or distributed by appellant.

tion of the law in selling the device. The insurer refused to defend, Hagen defended the suit and lost. Hagen then instituted an action against the insurer. It argued that the place of the negligent act—the sale which was the proximate cause of the injury—was controlling, and the place of the accident should be immaterial. *Id.* at 201. The Eighth Circuit Court of Appeals disagreed. Failing to find a duty to defend, the court stated, "[T]he question to be resolved here concerns the place where the accident occurred, not the proximate cause of it." *Id.* at 202. *See also Hultquist v. Novak,* 202 Minn. 352, 278 N.W. 524 (1938), ("Some circumstances may have occurred on the premises which may have contributed to an injury which resulted from an accident occurring elsewhere. This may have resulted in liability on the part of the defendant without coming within the coverage of the policy because the accident did not happen within the area limited by the terms of the contract. We are concerned here with the whereabouts of the accident, not with the question of proximate cause.")

Keystone cites *Oil Base, Inc. v. Continental Casualty Company,* 271 Cal.App.2d 378, 76 Cal.Rptr. 594 (1969) and *Shields v. Hiram C. Gardner, Inc.,* 92 Idaho 423, 444 P.2d 38 (1968) to support its contention that even though the actual damage arose outside of the policy territory, because the negligent acts occurred within the territory, the insurer had a duty to defend. We find neither case to be particularly instructive here, as both may be distinguished on their facts and their reasoning.

In *Oil Base,* appellant company had purchased a policy from Continental Casualty to cover injury or destruction of property caused by accident. The policy was limited to accidents which occurred within the United States of America, its territories or possessions, or Canada. Appellant company sold some bags of drilling mud to a company located in South America; some time later, the drilling mud caught fire by spontaneous combustion. Continental Casualty contended that its policy was inapplicable as the accident occurred outside the policy territory.

The reviewing court held that the insurer did have a duty to defend and indemnify. It based its decision upon a definition of the word "accident" taken from a California case, *Maxon v. Security Insurance Company*, 214 Cal. App.2d 603, 29 Cal.Rptr. 586 (1963): "The word accident is predicated on an occurrence which is the cause of the injury. That is to say, as used in liability insurance contracts, the word is employed to denote the cause, rather than the effect." *Id.* at 612, 29 Cal.Rptr. at 591. Because the court found that the policy could have defined accident and did not, it applied the above definition and found that the accident in question occurred in Venezuela.

Further, the court pointed out that the policy in question was a general liability policy, and defined the risk coverage without geographical limitations. It was only in the Insurance Agreement paragraph of the policy that Continental set out the policy territory. For this reason, the court found that the insured could have believed he would have been covered against third party suits such as the one in question.

The California Court of Appeals expressly questioned the *Oil Base* decision in *Employers Casualty Co. v. Northwestern National Ins.*, 109 Cal.App.3d 462, 167 Cal.Rptr. 296 (1980). That court concluded that the general rule is that the time of the occurrence of an accident within the meaning of an indemnity policy is not the time the wrongful act was committed, but the time when the complaining party is actually damaged. *Id.* at 469, 167 Cal.Rptr. at 299. It then went on to state:

> Two California cases [one of which is] ... *Oil Base* ... are in direct conflict with all other California cases as well as the leading cases from other jurisdictions ... *Oil Base* '[has] taken a path diverging from that followed by a long line of authority....'

*Id.* (Citations omitted). The California court then declined to follow that path. *Id.*

In *Shields*, the other case cited by Keystone, seeds that had been sold to Mexican farmers failed to germinate

because of an error in mechanical mixtures applied in the United States. The policy territory, which had been set out as was the territory in the instant case, was altered by a "General Change Endorsement" in which the word accident was substituted for the word occurrence "wherever used with respect to coverages afforded for 'Property Damages Liability—Losses' resulting from Products as afforded hereunder." The definition of product was amended to include protection against liability from the erroneous delivery of seeds, errors in mechanical mixtures, cross-pollination, germination failure or noxious weed seed.

Again, the term "accident" was used in the policy in question to encompass specific happenings. As the Idaho court pointed out, the executive vice president of the insurer told an executive of the insured that it was covered from seed product losses caused by accident. The very thing against which *Shields* was insured, the mistake in mechanical mixture, did occur, and occurred in Idaho, within the policy territory. The court had no difficulty in finding from the amendments to the policy and the definitions added that this accident was exactly what the insured had purchased insurance against, and that therefore the insurer was liable to defend.

*Shields* can then give no comfort to Keystone here. In the instant case, no changes or amendments have taken place. Unlike the situation in *Shields,* the occurrence against which Keystone was insured did not occur. No representations were made by appellee to appellant concerning extension of policy coverage. Appellant received exactly the amount of coverage to which it was entitled. The appellant cannot argue as did the insured in *Oil Base* that it had a reasonable expectation that it would be covered under the policy as it was written. The policy territory limitation is discussed in a section entitled Policy Territory, and defined in the definition section of the policy. Again, had Keystone wished to obtain world-wide coverage, it could have done so by paying an additional premium. Clearly Keystone could have had no reasonable expectation that it

would be covered outside the policy territory as defined. Further, the term "accident" is not used here in any specialized way, nor is it in issue.

The assertions of Keystone that courts of other jurisdictions have held that the time of the negligent act or omission is the time at which the policy period should be determined, and that therefore by analogy the place of the negligent act or omission is the place which determines policy territory, are unfounded. Most courts have declined to follow that holding, as did the California Court of Appeals in *Employers Casualty, supra,* as do we here. Judge McFadden, dissenting in *Shields,* surveyed analogous case law. He found that three lines of authority existed: "products hazard" cases;[2] "on the premises" cases;[3] and "completion of work" cases.[4] These cases distinguished between the act which caused the injury or damage (sale, negligent handling, defective product, improper installation) and the injury or damage itself. Policy coverage existed only where the damage manifested itself during the policy period or on the premises covered by the policy. 92 Idaho at 433, 444 P.2d at 48. Following this authority, Judge McFadden found that the policy's territorial condition rendered it applicable only within the United States, its territories, or Canada. *Id.* at 434, 444 P.2d at 49.

Our own examination of case law in the area indicates that it is the position of a majority of jurisdictions that the time at which damages arise is the proper time at which to determine the policy period. *See, e.g., Utica Mutual Insur-*

**2.** The sale of a defective article takes place during the policy period, but the defect in the article sold manifests itself with resulting damages only after policy expiration. *See, e.g., Silver Co. v. National Union Fire Insurance Co.,* 246 Or. 398, 423 P.2d 944 (1967).

**3.** A defective product is sold or negligently handled on the premises, but the defect or negligence does not manifest itself until the article has been removed from the premises and then the event occurs which causes the injury. *See, e.g., Smith v. Maryland Casualty Co.,* 246 Md. 485, 229 A.2d 120 (1967).

**4.** Insured installs or services a piece of equipment and the job is done in an improper manner. Injury results after the completion of the policy period. *See, e.g., Neumann v. Wisconsin National Gas Co.,* 27 Wis.2d 410, 134 N.W.2d 474 (1965).

*ance Co. v. Tuscaloosa Motor Co., Inc.,* 295 Ala. 309, 329 So.2d 82 (1976) (negligent repairs took place during policy period, damage after; no coverage); *Outdoor World v. Continental Casualty Ins. Co.,* 122 Ariz. 292, 594 P.2d 546 (1979) (boat with steering mechanism sold during policy period, injury occurred after; accident occurs when party is damaged); *Employers Casualty Co. v. Northwest National Insurance,* 109 Cal.App.3d 462, 167 Cal.Rptr. 296 (1980) (injuries occurred subsequent to policy period, acts leading up to injuries occurred when policy was in effect; no coverage); *Samuelson v. Chutich,* 187 Colo. 155, 529 P.2d 631 (1974) (gas line negligently installed during policy period, exploded after; accident occurred at time of explosion not when wrongful act occurred); *Prieto v. Reserve Ins. Co.,* 340 So.2d 1282, 1283 (Fla.Dist.Ct.App.1977) (building built in policy period, collapsed after; accident took place when collapsed); *Millers Mutual Fire Ins. Co. v. Ed Bailey, Inc.,* 103 Idaho 377, 647 P.2d 1249 (1982) (installation of insulation in potato storage structure during policy, fire after; time of occurrence, not time of wrongful act determines coverage); *Oceanics, Inc. v. Petroleum Dis. Co.,* 280 So.2d 874 (La.App.1973) (crane negligently repaired when policy in effect, collapsed after; no coverage since no property damage during policy period); *Moss v. Shelby Mut. Ins. Co.,* 105 Mich.App. 671, 308 N.W.2d 428 (1981) (deck negligently constructed during policy period, damage after; majority rule is accident occurs when injury occurs rather than date of negligent act); *Reliance Ins. Co. v. Arneson,* 322 N.W.2d 604 (Minn.1982) (malpractice claims; not negligent until acts or omissions result in damage). By analogy then, we hold that the "occurrence" which triggers the policy coverage occurs where the actual damage happens.

Considering the pleadings in both this case and the underlying suit, as well as case law, it cannot be said that the trial court erred. The court properly refused to accept as true conclusory statements and unjustified inferences made by Keystone. Further, the court properly followed the case law in Pennsylvania and the better reasoned opinions of the majority of jurisdictions when it held as a matter of law

that the place of damages was the place at which to determine the policy territory. As no damages could be shown from the pleadings to have arisen in the United States, its territories or possessions, or Canada, the trial court did not err in granting judgment for appellee Reliance.

Order affirmed.