**Shirley BOSTICK and Adrienne Bostick, Plaintiffs,**

v.

**ITT HARTFORD GROUP, INC. a/k/a and/or d/b/a as ITT Hartford, and/or the Hartford, and Hartford Insurance Company of the Midwest, Defendants,**

**No. CIV. A. 97–CV–6296.**

United States District Court, E.D. Pennsylvania.

July 27, 1999.

Neil E. Jokelson, Philadelphia, PA, for Plaintiffs.

Patrick J. Keenan, Philadelphia, PA, for Defendants.

## *MEMORANDUM*

LOWELL A. REED, Senior District Judge.

Presently before the court is the motion of defendant ITT Hartford Groups, Inc. ("Hartford") for summary judgment (Document No. 22) pursuant to Federal Rule of Civil Procedure 56(c), the memorandum of plaintiffs in opposition thereto (Document No. 23) and the reply of Hartford (Document No. 25). Based on the following

analysis, the motion of Hartford will be granted in part and denied in part.

## I. Background

In their complaint, the plaintiffs contend that an outside wall of their house collapsed. *See* Defendants' Exhibit A, Plaintiffs' Complaint at 10. The loss involved the "[o]utside wall of the first floor, including the basement—on the side in the rear of house [sic] collapsed." *See* Defendants' Exhibit D, Plaintiffs' Answers to Hartford's Interrogatories, ¶ 5. The plaintiffs assert that the loss of the collapsed wall is covered under their Hartford Homeowners Policy. The policy, no. 55 RB 932355, was in effect between March 27, 1996 and March 27, 1997. *See* Defendants' Exhibit B, Homeowners Policy.

In order to qualify for policy coverage, several conditions must be met. First, the loss incurred must be provided for in the policy. Possible restrictions may limit the insured's ability to recover the incurred loss. *See* Defendants' Exhibit B, Homeowners Policy, Section 1—Property Coverages, Additional Coverages, ¶ 8 at 5 of 18. Second, the loss must occur during the policy period. For instance, if a deterioration problem occurred prior to the effective date of a policy, an insurer would not be held liable for ongoing damage that began before the insurer's policy period. *See* Defendants' Exhibit B, Homeowners Policy, Section I and II—Conditions, ¶ 1 at 17 of 18. Third, the policy requires suit to be started within one year after the date of the loss. *See* Defendants' Exhibit B, Homeowners Policy, Section I—Conditions, ¶ 8 at 11 of 18. Plaintiffs filed their complaint here on October 8, 1997.

After receiving notice of the October 1996 loss, Hartford employed an engineer, Nicholas S. Colanzi, M.S.C.E., P.E., to inspect the plaintiff's property. Mr. Colanzi's December 18, 1996 report provided that "the damage to the Bostick dwelling is the direct result of long term water infiltration and differential earth movement which has occurred over time (years)."

*See* Defendants' Exhibit H, The Defendants' Expert Report at 4. He further opined that the collapse of the wall could not causally be related in any way to any single occurrence or sudden event of weather-related or other phenomena. *Id.* The defendants further contend that because the plaintiffs' property was located in the Logan section of Philadelphia, an area that has experienced problems with its houses, including settlement, unevenness of the ground, drainage problems and wet basements, the plaintiffs were aware of such problems as early as 1991 or 1992. *See* Defendants' Exhibit C, Adrienne Bostick's Deposition at 49–50. Based on their expert's testimony and evidence of similar area damage, Hartford rejected the Bosticks' claim in a letter dated March 12, 1997, asserting that the loss to the Bosticks' home was not covered by the policy. *See* Defendants' Exhibit J, Letter from Hartford Insurance Denying Coverage.

Significantly, however, the plaintiffs' expert, Kenneth P. Creech, P.E., who is a professional engineer, examined the property and opined in his November 13, 1998 report that "[o]n October 8, 1996, the rear section of the subject property collapsed" and "the cause of the collapse was failure of the mortar in the brick wall due to hidden water damage." *See* Defendants' Exhibit I, Plaintiffs' Expert Report at 1–2. He further concluded that the cause of the failure was not related to sinking, rising, or shifting of the earth at the time of the collapse. *Id.* Because the policy insures against hidden decay, the plaintiffs contend that the homeowners policy covers the loss suffered.

The defendants request that summary judgment be entered in their favor. The plaintiffs are Pennsylvania citizens. The defendants are foreign corporations with their principle places of business in Connecticut. The amount in controversy exceeds $75,000 exclusive of interests and costs. Diversity of citizenship exists and jurisdiction is founded upon 28 U.S.C. § 1332.

## II. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," then a motion for summary judgment may be granted.

The moving party has the initial burden of illustrating for the court the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The movant can satisfy this burden by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case;" the movant is not required to produce affidavits or other evidence to establish that there are no genuine issues of material fact. *Celotex*, 477 U.S. at 323–325, 106 S.Ct. 2548.

Once the moving party has made a proper motion for summary judgment, the burden switches to the nonmoving party. Under Rule 56(e),

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Hence, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party opposing the motion must come forward with specific facts. *Id.* Before a court will find that a dispute about a material fact is genuine there must be sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the moving party is entitled to summary judgment, as a matter of law, when the "non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

## III. Analysis

The defendants have presented several alternative grounds upon which summary judgment may be granted based upon restrictions within the policy which may limit the plaintiffs' ability to recover for damages suffered. The defendants first assert that the plaintiffs' claimed loss is excluded from recovery under policy conditions. Second, the defendants contend that the loss, which began as early as January, 1996, occurred well before the effective date of the homeowners policy. Third, the defendants insist that because the plaintiffs failed to file suit within one year from the date of loss, the claim is time-barred.

### A. Additional Coverage for Collapse

The plaintiffs' homeowners policy does not "insure for loss ... [i]nvolving collapse, other than as provided in Additional Coverage 8...." *See* Defendants' Exhibit B, Homeowners Policy Section I—Perils Insured Against, Coverage A, ¶ 1 at 6 of 18. Additional Coverage 8 provides coverage for collapse of a building or a part of a building caused by certain named perils. The additional coverage for collapse in the policy states, *inter alia:*

> Collapse. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. Perils Insured Against in COVERAGE C—PERSONAL PROPERTY. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

b. Hidden decay; ... [L]oss ` to an awning ... foundation, retaining wall... is not included under items b., c., d., e., and f. unless the loss is a direct result of a collapse of a building.

Defendants' Exhibit B, Homeowners Policy, Section I—Property Coverages, Additional Coverages, ¶ 8 at 5 of 18.

The parties do not dispute that Pennsylvania law applies. Under Pennsylvania law, if the loss of a house was caused by collapse due to hidden decay, it clearly and unambiguously would be covered by the terms of the aforementioned policy. *See Norfolk & Dedham Mut. Fire Ins. Co. v. DeMarta*, 799 F.Supp. 33, (E.D.Pa.1992), *aff'd*, 993 F.2d 225 (3d Cir.1993). In *Norfolk*, under an identical policy provision pertaining to collapse, the court found that the loss of the defendant's house was caused by collapse due to hidden decay. The court granted the policy holder defendant's motion for summary judgment and declared that his claim was covered under the homeowners policy.

■ However, in *Norfolk*, the affidavit of the building inspector was uncontested and relied upon by both parties to support their motions for summary judgment. Conversely, in this case both the plaintiffs and defendants have submitted conflicting expert reports. The plaintiffs' expert, Mr. Creech, has opined that hidden decay, a risk insured against, was indeed the cause of the collapse. Mr. Creech explained that "the brick mortar and wood lintels appear to have deteriorated from hidden water damage, causing the upper brick wall mortar to crumble, permitting the building load to crush lintels rotted at their ends and collapse the wall." Defendants' Exhibit I, Plaintiffs' Expert Report at 2. The defendants' expert, Mr. Colanzi, however, has assessed the damage to the house to be the direct result of long term water infiltration into the basement and differential earth movement. *See* Defendants' Exhibit H, Defendants' Expert Report at 4. He further stated that the collapse "cannot causally be related in any way to any single occurrence or sudden event of weather-related or other phenomena." *Id.* Such contention raises a genuine issue of material fact regarding whether the collapse was due to hidden decay and covered under the policy, and thus, summary judgment pertaining to the issue of collapse coverage will not be granted.

### B. The Policy Period

The policy limits coverage to loss suffered within the policy period. The plaintiffs' policy period was between March 27, 1996 and March 27, 1997. The defendants contend that the first manifestation of a deterioration problem with the rear wall occurred in January 1996, more than two months before the effective date of the Hartford policy. The defendants attest that the policy did not cover the worsening condition of the wall, which led to its additional failure in October 1996. The plaintiffs, however, make the distinction between previous minor damage to plaintiffs' home from the earth shifting, damage for which the plaintiffs' are not seeking compensation, and the major damage to plaintiffs' home from the hidden decay which caused the October 1996 collapse, which was within the policy period. The plaintiffs assert that the minor damage to their home prior to the policy period is in no way related to or evidence of hidden decay. The plaintiffs contend that the decay of the interior portion of the rear wall remained hidden until the wall collapsed in October, 1996.

■ By its terms, the Hartford homeowners policy "applies only to loss in Section 1 ... which occurs during the policy period." Defendants' Exhibit B, Sections I and II—Conditions, ¶ 1 at 17 of 18. For insurance purposes, damages "occur" when they "first manifest themselves in a way

that could be ascertained by reasonable diligence." *Keystone Automated Equipment v. Reliance Insurance Company*, 369 Pa.Super. 472, 535 A.2d 648, 651 (1988); *D'Auria v. Zurich Insurance Company*, 352 Pa.Super. 231, 507 A.2d 857, 862 (1986)(holding that none of the physician's insurers had a duty to provide coverage since "[T]he effects of the negligence first manifested themselves prior to the coverage periods of any of the three policies."). This would apply even if the damage continually worsened. "The rule is based on the realization that the purpose of insurance is to protect insureds against unknown risks." *Appalachian Insurance Company v. Liberty Mutual Insurance Company*, 676 F.2d 56, 63 (3d Cir.1982). However, if a deterioration problem occurred prior to the effective date of a policy, an insurer would not be held liable for ongoing damage that began before the insurer's policy period. *Id.; see also Summers v. Harris*, 573 F.2d 869 (5th Cir.1978)(holding that a flood insurance policy did not cover damage to the insured house which resulted from a flood that began eight days before the policy was issued).

█ The plaintiffs in their depositions have admitted that the deterioration of the rear wall occurred over an extended period of time, prior to the collapse of the wall. *See* Defendants' Exhibit C, Adrienne Bostick's Oral Deposition, April 17, 1998; Defendants' Exhibit F; Shirley Bostick's Oral Deposition, April 16, 1998. Adrienne Bostick testified that the area of the wall that collapsed in October 1996, was the same area that had previously fallen. *See* Defendants' Exhibit C, Adrienne Bostick's Oral Deposition at 75. Furthermore, Adrienne Bostick admitted that the stone, that had fallen out of the wall, was put back in and covered up to dry. *See id.* at 76. Additionally, Shirley Bostick recalled in her deposition that she had seen flaking of the wall prior to the October collapse. *See* Defendants' Exhibit F, Shirley Bostick's Oral Deposition at 171. However,

the plaintiffs' expert opined that "the causation of the failure was [not] in any way related to sinking, rising, or shifting of the of the [sic] earth at the time of the collapse." Defendants' Exhibit I, Plaintiffs' Expert Report at 2. The plaintiffs' expert further affirmed that "one crack at the rear of the property is typical of stress cracks found in most structures at corners of buildings and was not related to the structural failure of the north areaway wall." *Id.* The plaintiff's expert concludes that the wall collapsed on October 8, 1996 and was due to hidden water damage. Taken in the light most favorable to the plaintiffs, a genuine issue of material fact has been raised regarding whether the deterioration occurred prior to the effective date of the policy. The defendants' motion for summary judgment based upon the policy period defense will not be granted.

## C. Time Limitations

The plaintiffs commenced this action on October 8, 1997. In order for this action to be timely, the defendants assert that the first manifestation of the plaintiffs' loss must have been on or after October 8, 1996. In response to the defendants' interrogatory 5(b), the plaintiffs state that the most recent wall failure occurred on October 6, 1996. The defendants contend that even if the date of loss was October 6, 1996, the claim is time-barred because the plaintiffs did not file suit until October 8, 1997.

█ The Hartford homeowners policy requires suit to be "started within one year after the date of loss." *See* Defendants' Exhibit B, Section I—Conditions, ¶ 9 at 11 of 18. In Pennsylvania, suit against an insurer is barred if filed beyond the contractual period of limitations contained within the insurance policy. *See Schreiber v. Penn. Lumberman's Mut. Ins. Co.*, 498 Pa. 21, 444 A.2d 647, 649 (1982); *Lardas v. Underwriters Insurance Co.*, 426 Pa. 47, 231 A.2d 740 (1967). Furthermore, 42 Pa.C.S.A. § 5501(a) provides

that contractual limitations of suit provisions, which are shorter than an applicable statute of limitations, are valid so long as they are not manifestly unreasonable.[1]

■ The policy's one year limitation period "runs from the date of the occurrence of the destructive event or casualty insured against." *General State Authority v. Planet Insurance Company,* 464 Pa. 162, 346 A.2d 265, 267 (1975). In *General State Authority,* the insured's rental property was destroyed by fire on January 2, 1969, but it was unaware of the loss until May 10, 1971. After the claim was denied by its insurer, the insured filed suit on November 11, 1971. The policy required the insured to file suit "within twelve months next after inception of the loss." *Id.* The insured argued that the one year should be measured from the date of discovery. The court held that the limitation does not run from the date the insured discovers the loss. *Id.; see also Lardas,* 426 Pa. 47, 231 A.2d 740 (holding that a loss occurs and has its inception whether or not the insured knows of it).

Contrary to the plaintiffs' interrogatory response that the collapse occurred on October 6, 1996, the plaintiffs' expert stated that "[o]n October 8, 1996, the rear section of the subject property collapsed." *See* Defendants' Exhibit I, Plaintiffs' Expert Report. In addition, the plaintiffs otherwise refer to the date of the occurrence as October 8, 1996. There is ambiguity in the record before the Court regarding the date of the occurrence. One inference from that record would allow a finding that suit was commenced on time. Therefore, I conclude that the defendants' motion for summary judgment regarding time limitations will be denied.

### D.   Bad Faith

"In Pennsylvania, there is no common law remedy for bad faith on the part of an insurer, but there is a statutory remedy...." *See MGA Insurance Company v. Bakos,* 699 A.2d 751, 754 (1997). Section 8371 of Title 42 provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

■ While the legislature has not defined the term "bad faith" within this statute, courts have attached a particular meaning to the term within the insurance context:

*Insurance.* "Bad faith" on [the] part of [an] insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky v. Prudential Property and Casualty Ins. Co.,* 437 Pa.Super. 108, 649 A.2d 680, 688 (1994)(quoting Black's Law Dictionary 139 (6th ed. 1990)); *see also Romano v. Nationwide Mut. Fire Ins. Co.,* 435 Pa.Super. 545, 646 A.2d 1228, 1232 (1994). In order to recover for a claim of bad faith, the insured must show that the

---

1. The statute provides: "An action, proceeding or appeal must be commenced within the time specified in or pursuant to this chapter unless in the case of an action or proceeding a different time is provided by this title or another statute, or in the case of a civil action or proceeding, a shorter time which is not manifestly unreasonable is prescribed by written agreement." 42 Pa.C.S.A. § 5501(a).

insurer "did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Bakos,* 699 A.2d at 754 (quoting *Terletsky,* 649 A.2d at 688).

"A recovery for bad faith requires clear and convincing evidence of bad faith, rather than mere insinuation. . . ." *Bakos,* 699 A.2d at 754; *Terletsky,* 649 A.2d at 688. The "clear and convincing" standard requires a showing by the plaintiffs that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith. *See Stafford v. Reed,* 363 Pa. 405, 70 A.2d 345, 348 (1950); Packel, *Pennsylvania Evidence* § 303.2 (1987). In a bad faith case, summary judgment is appropriate when there is no clear and convincing evidence that the insurer's conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim. *See Jung v. Nationwide Mutual Fire Insurance Co.,* 949 F.Supp. 353 (E.D.Pa.1997); *Leo v. State Farm Mutual Automobile Insurance Co.,* 939 F.Supp. 1186, 1192–1193 (E.D.Pa. 1996).

■ The plaintiffs assert that the defendants' reasons for denying coverage were not given in good faith. *See* Defendants' Exhibit J, Letter Denying the Plaintiffs' Claim. The plaintiffs also assert that the defendants solicited Shirley Bostick through the American Association of Retired Persons ("AARP"), to which she is a member, and targeted her as a potential insured. The plaintiffs allege that because Shirley Bostick is a senior citizen, the defendants delayed in addressing the plaintiffs' claim and invented new reasons for denying their claim so that the Bosticks would settle for less. *See* Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at 11–12. To substantiate the aforementioned assertions, the plaintiffs present no evidence; they merely refer to the defendants' standard AARP Brochure. *See* Plaintiffs' Exhibit 3, Defendants' AARP Brochure.

■ Hartford's retained engineer, Mr. Nicholas Colanzi, concluded in his December 18, 1996 report that the damage to the wall was "the direct result of long term water infiltration" and noted that this long term condition was apparent before the October 1996 wall failure. *See* Defendants' Exhibit H, Defendant's Expert Report at 4. He further reported evidence of old cracks and bulges in the foundation basement walls, peeling and mortar patches on the interior and exterior perimeter walls. *Id.* Based upon the findings of Mr. Colanzi and the terms of the homeowners policy, Hartford denied the plaintiffs' claim by letter. *See* Defendants' Exhibit J, Defendant's Letter Denying Plaintiffs' Claim. Whether or not the defendants' expert correctly assessed the cause of damage, the plaintiffs have not presented evidence to substantiate their claim that Hartford acted unreasonably. Bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law. *See J.H. France Refractories Company v. Allstate Insurance Company,* 534 Pa. 29, 626 A.2d 502, 510 (1993); *Terletsky,* 649 A.2d at 690; *Jung,* 949 F.Supp. at 359 n. 7 (declining to express an opinion on "[W]hether Nationwide's interpretation of the law was correct. This is irrelevant, because as long as Nationwide's act was reasonable, bad faith cannot be found even if their analysis of the law was wrong."). Thus, the Court concludes that, even taken in the light most favorable to them, the plaintiffs have not produced sufficient evidence to demonstrate that Hartford acted in bad faith. On the plaintiffs' claim of bad faith, summary judgment will be entered in the defendants' favor.

## IV. Conclusion

The defendants' motion for summary judgment shall be granted in part and

denied in part. An appropriate Order follows.

## ORDER

**AND NOW,** this 27th day of July, 1999, upon consideration of the motion of defendants ITT Hartford Group, Inc., a/k/a and/or d/b/a as ITT Hartford, and/or The Hartford, and Hartford Insurance Company of the Midwest for summary judgment (Document No. 22), and the plaintiffs' response thereto (Document No. 23), for the reasons set forth in the foregoing memorandum, it is hereby accordingly **ORDERED** that the defendants' motion is **GRANTED IN PART** and **DENIED IN PART. IT IS FURTHER ORDERED** that **JUDGMENT IS ENTERED** in favor of the defendants with respect to the plaintiffs' claim for bad faith only; as to the other issues raised by the defendants, the motion is **DENIED**.