606 A.2d 470

**Clara KELLY, Appellant,**

**v.**

**NATIONWIDE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Dec. 19, 1991.

Filed April 2, 1992.

8

Rose A. McGowan, Moscow, for appellant.

Joseph A. Ramser, Scranton, for appellee.

Before CAVANAUGH, FORD ELLIOTT and HOFFMAN, JJ.

CAVANAUGH, Judge.

This is an appeal from the lower court's May 9, 1991 order granting the motion of Nationwide Insurance Company ("appellee") for judgment on the pleadings against Clara Kelly ("appellant"). Appellant's Complaint sought to have the lower court declare that an automobile policy exclusion that prevented vehicles insured under the liability coverage of the policy from being considered as an underinsured vehicle violated public policy. We agree with the lower court that such a policy exclusion does not violate public policy. We affirm.

The facts are as follows. Both appellant and her husband, Edward J. Kelly, are named policyholders on a single

Nationwide Automobile Insurance policy which covers two cars, a 1985 Chrysler and a 1979 Plymouth. On July 7, 1989, appellant, suffered a severe arm injury while a passenger in the Chrysler when her husband, the driver, lost control of it during a heavy rainstorm on Interstate Route 84 and crashed into a concrete structure. Subsequent to the accident, appellee has paid the appellant fifty thousand ($50,000) dollars, the maximum amount of liability coverage on the 1985 Chrysler.

After payment, appellant demanded from the appellee benefits under the underinsurance coverage of the same policy. Appellant asserted that while the liability limits on the accident vehicle (the Chrysler) had been recovered, underinsurance benefits were available from the appellee on the 1979 Plymouth (the non-accident vehicle). Nationwide rejected this demand, noting that its policy excluded from the definition of "underinsured motor vehicle" any vehicle insured under the liability coverage of the policy.[1] Appellant filed a declaratory judgment action in the Court of Common Pleas, Lackawanna County, seeking an order that the exclusion contained in the policy is void against public policy and legislative intent. Appellee filed a motion for judgment on the pleadings. After the submission of briefs and oral argument, the lower court entered an order granting a judgment on the pleadings. This appeal followed.

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1034; *Giddings v. Tartler*, 130 Pa.Cmwlth. 175, 177, 567 A.2d 766, 767 (1989). Thus, "[i]n reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must deter-

---

1. The policy contained an amendatory endorsement, captioned Endorsement 2113, which unambiguously states:
    We will not consider as an underinsurance motor vehicle:
        1. ...
        2. any motor vehicle insured under the liability coverage of this policy.

mine if the action of the trial court was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury." *Vogel v. Berkley*, 354 Pa.Super. 291, 296, 511 A.2d 878, 880 (1986), *quoted in Keystone Automated Equip. v. Reliance*, 369 Pa.Super. 472, 475, 535 A.2d 648, 649 (1988), *alloc. den.*, 519 Pa. 654, 546 A.2d 59. An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits. *Jones v. Travelers Ins. Co.*, 356 Pa.Super. 213, 217, 514 A.2d 576, 578 (1986); *West Penn Administration, Inc. v. Pittsburgh National Bank*, 289 Pa.Super. 460, 467, 433 A.2d 896, 900 (1981). Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. *Sinn v. Burd*, 486 Pa. 146, 149, 404 A.2d 672, 674 (1979); *Jones, supra*, 356 Pa.Super. at 217, 514 A.2d at 578. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. *Jones, supra*, 356 Pa.Superior Ct. at 217, 514 A.2d at 578; *Gallo v. J.C. Penney Casualty Ins. Co.*, 328 Pa.Super. 267, 270, 476 A.2d 1322, 1324 (1984). It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. 6 *Pennsylvania Standard Practice 2d* § 31:19 at 172. Only when the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings. *Jones, supra*, 356 Pa.Super. at 217, 514 A.2d at 578; *Gallo, supra*, 328 Pa.Super. at 270, 476 A.2d at 1324.

Appellant asserts two arguments before this court: (1) the lower court erred in granting judgment on the pleadings where the law is unclear as to whether a single automobile insurance policy, issued to a husband and wife but covering two cars, can contain an exclusion which would prevent recovery of underinsurance benefits in the situation *sub judice* and (2) the lower court erred in granting judgment on the pleadings where material issues of fact existed which indicated that the appellant's contractual relationship with

appellee was that of a separate policyholder of the 1979 Plymouth. Both arguments are interrelated, and we address appellant's second argument first as its resolution will facilitate our discussion of the first argument.

Preliminarily, we note that appellant accepts that she and her husband were named policyholders on a single policy of insurance. Her Complaint assumes this fact,[2] and seeks a Declaratory Judgment that the exclusion in the policy which prevents her from receiving the underinsured motorist benefits on the 1979 Plymouth is void as against public policy. The appellant seems to be arguing that we should pierce or disregard the words of the contract as a matter of either contract law or public policy to get to the underlying nature of the bargain, which, she feels, is that she was for all practical purposes insured "on" the 1979 Plymouth.

We address first appellant's claim that the trial court erred by granting judgment on the pleadings where material issues of fact existed as to whether appellant's contractual relationship with the appellee is as a policyholder on the 1979 Plymouth in her own right. The thrust of appellant's argument is that there was enough evidence to go to the finder of fact that the "real" nature of the contractual relation with the appellee is that she is the insured on the 1979 Plymouth and her husband separately is the insured on the 1984 Chrysler. The appellant makes much of the fact that the latest billing notice for the six month renewal premium reads as follows:

| | VEH/MAKE/YEAR 1 PLYM 79 | | VEH/MAKE/YEAR 2 CHRY 85 | |
|---|---|---|---|---|
| | LIMITS | PREMIUM | LIMITS | PREMIUM |
| UNINSURED MOTORIST | $25,000 | $18.90 | $25,000 | $18.90 |
| BI | $50,000 | | $50,000 | |
| PREMIUM IS BASED ON | | | | |
| —USE OF VEHICLE | PLEASURE | | PLEASURE | |
| —RATED DRIVER | ADULT, FEMALE | | ADULT, MALE | |

---

2. The Complaint states that at all times relevant to this matter, Edward J. Kelly and the appellant were insured pursuant to a Nationwide Automobile Insurance policy number 58–B–872925. Appellant's Complaint at paragraphs 5 & 6.

Moreover, the appellant contends that the appellee has admitted in its Answer to averment six (6) of her Complaint that the appellant was the insured on the 1979 Plymouth.

The billing notice does not create an issue of fact as to the contractual relation of the parties. Appellant has not alleged that the billing notice was part of that policy, or that the contract is ambiguous. Rather, the whole tenor of appellant's Complaint and argument has been that the contract does not adequately express the contractual relation between the parties. Consequently, the appellant must want us to consider the billing notice as extrinsic evidence as to the real meaning of the contract.[3] "When the words of the contract are unequivocal, it speaks for itself and a meaning cannot be given to it other than that expressed, and there is no need to refer to extrinsic aids or evidence to determine the intentions of the parties." *Marcinak v. Southeastern Greene School Dist.*, 375 Pa.Super. 486, 544 A.2d 1025 (1988); *Accord, East Crossroads Center, Inc. v. Mellon–Stuart Co.*, 416 Pa. 229, 230, 205 A.2d 865, 866 (1965). The appellant assumes as a given that the contract unequivocally states that appellant and her husband are policyholders on a single policy. Although her argument sounds in contract, appellant asks us to disregard the contract and discern the "real" or equitable relation of the parties as represented by the billing notice. This we cannot do, as we would be turning on its head contract analysis, which mandates that we will not consider extrinsic evidence where the contract is clear and unambiguous. As we may not consider inadmissible evidence in a motion for judgment on the pleadings, *see supra,* appellant's argument fails.

■ Alternatively, even if we were to consider the billing notice as part of the contract despite appellant's failure to allege it was part of the contract, we agree with the

3. We have examined the billing notice, and there exists nothing on its face that would imply that it is part of the appellants' policy. To the contrary, as noted *infra,* the billing notice specifically declares the policyholder to be "Edward J. & Clara Kelly."

appellant that the billing notice speaks for itself: it explicitly states that the policyholder is "Edward J. & Clara Kelly." *See* Exhibit "A" of Plaintiff's Complaint. We note that the "granting of judgment on the pleadings may be appropriate in cases that turn on the construction of a written agreement." *DiAndrea v. Reliance Savings and Loan Association,* 310 Pa.Super. 537, 546, 456 A.2d 1066, 1070 (1983); *Accord, Vogel, supra,* 354 Pa.Super. at 296, 511 A.2d at 880. Even assuming that the billing notice can be considered part of the contract, we find that the billing notice does not create an ambiguity as to whether appellant is a policyholder in her own right. For the foregoing reasons, appellant's contention is meritless.

We also find that appellant's contention that appellee in its Answer admitted that appellant was the insured of the non-accident vehicle to be a meritless claim. Appellant contends that the appellee's response in its Answer to the averments of paragraph (6) of appellant's Complaint are an admission that she is the insured and primary driver of the non-accident vehicle. However, it is apparent that from the averments of paragraph (6) what appellee admitted to in its Answer was that appellant was insured *under the policy* and was listed as the primary driver of the 1979 Plymouth:

6. At all times relevant to this matter, Plaintiff was insured pursuant to a Nationwide Automobile Insurance policy number 58–B–872925 and was listed as the primary driver of a 1979 Plymouth with medical and work-loss benefits of $10,000.00 each, and underinsurance coverage limit of $25,000.00.

Appellant has made an unjustified inference from this averment, contorting the natural meaning of the words to support her position. Thus, we find this contention meritless also. We agree with the trial court that appellant has presented no issue of fact that appellant is the policyholder "on" the 1979 Plymouth.

■ The tenor of appellant's second argument is that the motion for judgment on the pleadings is not appropriate unless it is clear on the face of the pleadings that the law

will not permit a recovery, *Merrit v. Board of Education of School District of Philadelphia,* 99 Pa.Cmwlth. 178, 513 A.2d 504 (1986), and since Pennsylvania case law has not had the opportunity to address the precise fact scenario before the court, the trial court erred in granting the motion for judgment on the pleadings. The appellant specifically argues that we have not yet addressed the following involved and nuanced scenario: whether public policy is violated where a policy exclusion bars an injured policyholder from collecting underinsured motorist benefits where (1) one policy is issued to two persons covering two vehicle, (2) the injured policyholder has collected the limits of liability coverage from the accident vehicle and is seeking underinsurance benefits from the second vehicle, and (3) the injured policyholder appears to be insured on the non-accident vehicle.

Once again, the gist of appellant's argument is that we should penetrate the literal language of the policy which would bar recovery, because "in substantive terms [ ] her factual position is identical to that of a separate policyholder." Appellant's Brief at 19. However, as opposed to the appellant's argument *supra,* the emphasis of this argument is that public policy rather than the contractual relation of the parties militates we find that the lower court erred. We disagree. Our examination of the law in this area indicates that the public policy behind the underinsurance provisions of the Motor Vehicle Financial Responsibility Act is not violated by the appellee's policy exclusion.

The seminal case concerning a challenge that a policy exclusion violated the public policy behind underinsured motorist provisions in our Commonwealth is *Wolgemuth v. Harleysville Mut. Ins. Co.,* 370 Pa.Super. 51, 535 A.2d 1145 (1988) (*en banc*), *alloc. den.,* 520 Pa. 590, 551 A.2d 216. The Court *en banc* unanimously held that a passenger injured in a vehicle who recovered the liability limits of the driver's policy could not receive underinsurance benefits under that same policy. Enroute to our holding, we set

forth the purpose and principles behind underinsurance motorist statute:

> The purpose of underinsurance motorist coverage is to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate liability coverage to compensate for the injuries caused by his negligence.... The language of the statute itself suggests that underinsurance motorist coverage requires the existence of at least *two* applicable policies of motor vehicle insurance. See 75 Pa.C.S.A. § 1731(c). Thus, the statute contemplated one policy applicable to the vehicle at fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a second policy, under which the injured claimant is either an insured or a covered person. It is the second policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

*Id.,* 370 Pa.Superior Ct. at 58, 535 A.2d at 1149. The Court went on to declare that the family car exclusion in the policy did not violate public policy.

A panel of this Court next had occasion to address whether a policy exclusion violated the public policy behind the underinsurance provisions of the MVFRL in *Newkirk v. United States Automobile Association,* 388 Pa.Super. 54, 564 A.2d 1263 (1989). In *Newkirk,* the appellant was injured in a single vehicle automobile accident in which her husband was driving. She was offered the maximum amount of liability coverage provided under her husband's policy, $15,000. The appellant rejected this offer, and attempted to attain the maximum amount of underinsurance coverage under the policy, $300,000. This was despite an explicit family car exclusion in his automobile insurance policy which stated:

[N]either "uninsured motor vehicle" nor "underinsured motor vehicle" includes any vehicle ... [o]wned by or furnished or available for the regular use of you or any family member.

After summary judgment was granted in favor of the insurance company, we considered on appeal whether the policy's family car exclusion violated public policy. We held that such a family car exclusion did not violate public policy, as "[w]hen the legislature created the underinsurance motorist coverage provisions of the MVFRL, they simply did not intend for an individual to recover third party liability benefits and first party underinsurance motorist benefits from the same automobile insurance policy." *Id.*, 388 Pa.Superior Ct. at 63, 564 A.2d at 1267. *Citing Wolgemuth,* the Court reasoned that the legislature enacted underinsurance motorist coverage to supplement an injured claimant's recovery from a tortfeasor who purchased automobile insurance which was insufficient to cover the claimant's damages. *Id.* Where a deficiency in the tortfeasor's automobile insurance exists, the injured claimant can look to any underinsurance motorist coverage in his own policy. *Id.*, 388 Pa.Superior Ct. at 64, 564 A.2d at 1268. Thus, the recovery of underinsured motorist coverage is dependent on two policies of insurance: the tortfeasor's insurance policy and the injured claimant's policy. *Id.* The Court stated that it could not agree with appellant because to do so would turn underinsurance coverage into additional liability coverage. *Id.* As the liability coverage in the policy for family members was limited to $15,000, agreeing with the appellant's argument would entail the drastic result that she would have $300,000 of underinsured benefits to supplement the limited sum ($15,000) she was legitimately entitled to under the policy. *Id.*

The most recent consideration of the underinsurance provisions of the MVFRL by a panel of this Court is *Marroquin v. Mutual Benefit Insurance Company,* 404 Pa.Super. 444, 591 A.2d 290 (1991), which the plaintiff claims is factually analogous to the facts *sub judice.* In *Marroquin,* the plaintiff was insured as a family member under his

parent's insurance policy. He was struck by his brother's car, which was covered under a separate policy of insurance. The plaintiff first recovered the liability limits under his brother's policy, and then sought underinsured benefits under a separate policy issued to his parents. After the insurer rejected the claim on the basis of a family car exclusion in the parent's policy, the plaintiff filed a declaratory judgment action. The Court held that the exclusion was invalid under Pennsylvania law. *Id.*, 404 Pa.Superior Ct. at 454, 591 A.2d at 296. It found persuasive a Minnesota Court of Appeals case *DeVille v. State Farm Mutual Automobile Insurance Company*, 367 N.W.2d 574 (Minn. App.1985), and adopted the reasoning and conclusions contained therein.[4] *Id.*, 404 Pa.Superior Ct. at 454, 591 A.2d at 296.

In *DeVille*, Jennifer DeVille was injured while riding as a passenger on her husband's motor cycle. After recovering the limits on her husband's policy, she sought to attain underinsurance benefits under the separate individual policy she had bought for her own automobile. The insurance company, however, refused to award her underinsurance benefits because the policy contained a "Family Car Exclusion." The Court found this particular exclusion void as against public policy:

DeVille recovered under the tortfeasor's liability coverage and is now seeking underinsured motorists benefits from her own personal policy with underinsured motorist coverage purchased by her for her own protection. This is classic "first-party" coverage and should follow her wherever she may be located when injured. She paid separate premiums for the car registered to her, and the policy was issued to her. To hold otherwise would be to carve out a new exception to the *Sarvela* rule, applicable

---

**4.** The Court noted that Pennsylvania courts have often relied on Minnesota case law interpreting Minnesota's motor vehicle insurance legislation, as our legislation is similar. *Marroquin, supra,* 404 Pa.Superior Ct. at 450 n. 3, 591 A.2d at 293 n. 3. Although the Court noted the Minnesota underinsurance provision and the holding in *DeVille, supra,* has subsequently been superseded by statute, our statute parallels the pre-amendment Minnesota law and thus the relevance of *DeVille* is not altered by the legislative amendment. *Id.,* 404 Pa.Superior Ct. at 455 n. 4, 591 A.2d at 296 n. 4.

> when the tortfeasor and the victim are a married couple. This is an exception that we cannot make. Although married, DeVille is a separate person from her tortfeasor husband, owns a separate automobile, and has a separate policy. We cannot infer that the two are somehow acting as one and attempting to convert underinsured motorist coverage into liability coverage.

*Id.* at 577, as quoted in *Marroquin, supra,* 404 Pa.Superior Ct. at 454, 591 A.2d at 296. As noted in *Marroquin,* the *Sarvela* rule to which the court refers is the rule of law first promulgated in *American Motorist Insurance Company v. Sarvela,* 327 N.W.2d 77 (Minn.1982). "The [*Sarvela*] rule states that a policy provision which excludes underinsurance motorist benefits when the insured is injured while occupying a vehicle owned by the insured or family member is presumed to be invalid." *Marroquin, supra,* 404 Pa.Superior Ct. at 455, 591 A.2d at 296. However, an exception to this rule exists when the plaintiff attempts to convert underinsurance coverage (first-party coverage) into liability coverage (third-party coverage). *Id. Marroquin* indicated that both *Wolgemuth* and *Newkirk* were not adverse to the *Sarvela* rule because they both fell into this exception. Similarly, the facts *sub judice* fall squarely into the Sarvela exception.

We have before us a situation where the named insured is trying to recover both the liability coverage and the underinsurance coverage on the same policy. We have consistently indicated that to recover underinsured motorist coverage there has to exist *two* policies of insurance. This is because the purpose of underinsured motorists coverage, as indicated *supra,* is to protect against the risk, in a *two* car accident, that the *other* vehicle's driver has inadequate liability coverage to compensate for injuries caused by his negligence. Here, unlike in *Marroquin,* the appellant and her husband purchased a single insurance policy. She was injured in a *single* vehicle accident while a passenger in a car driven by *a person also insured under the policy* (her husband), and seeks to recover underinsurance benefits

from the *same policy* from which she received liability benefits. The exclusion in the appellee's policy is thus in perfect accord with the purpose of underinsured coverage as elucidated in *Wolgemuth:* to protect the injured claimant against the risk that a tortfeasor over whom the claimant has no control purchases an inadequate amount of liability coverage. Here, the claimant and tortfeasor husband had control over the amount of liability coverage they purchased. We have no trouble holding that despite the appellant's attempt to characterize this as a novel claim, precedent has already spoken on this question.[5]

We find persuasive and analogous a progeny of *DeVille, supra,* the Minnesota Court of Appeals' decision in *Linder by Linder v. State Farm Mutual Insurance Company,* 364 N.W.2d 481 (Minn.App.1985). In *Linder,* the plaintiff was struck by a automobile driven by her brother and was paid the policy liability limits on it. The plaintiff subsequently sought underinsurance motorist benefits pursuant to separate policies on two other family automobiles and the insurer refused to pay, citing the family car provision in those policies. The Court rejected the contention that the family car provisions violated public policy, noting that all three policies were in the name of the same insured, the plaintiff's father. The Court declared that to rule otherwise would allow the father to convert his inexpensive underinsurance coverage into liability coverage. In upholding the exclusion, the Court stated: "[u]nderinsured motorist coverage is not designed to relieve an insured or his family from the failure to purchase adequate liability coverage." *Id.* at 483.

The appellant argues that, if we are not convinced by her argument that the law is unclear is meritorious, then *Mar-*

5. We note that if a party could avoid judgment on the pleadings by characterizing the parties' assertions as embodying a slightly different wrinkle than past precedent, judgment on the pleadings would never be granted. As always, we must decide whether there is no genuine issue of fact, and the moving party is entitled to judgment on the pleadings as a matter of law. *See,* Pa.R.C.P. 1034, *Giddings, supra.*

*roquin* is the closest analogy to the present case.[6] Appellant claims the present policy exclusion is in effect a family car exclusion. Moreover, she asserts that if we look at the policy's substance instead of its form we can discern that it is in reality two separate policies. However, the appellant is mistaken by deeming the exclusion in her policy a "family car exclusion." The exclusion does not exclude family members, as in *De Ville* and *Marroquin*, but excludes motor vehicles under the liability coverage of the policy from being considered as an underinsured vehicle. Thus, the appellee's policy exclusion embodies the permissible motivation of the *Sarvela* rule exception, as opposed to a family car exclusion, which can be at odds with the *Sarvela* rule, as illustrated by *De Ville* and *Marroquin*. Appellant, moreover, is mistaken when she avers the form of the policy rather than its substance prevents her from recovering underinsurance motorist benefits. As we noted *supra*, appellant's reliance on the billing notice and appellee's so-called "admission" is misguided. Moreover, the exact words of the policy clearly exclude from consideration as underinsured any vehicle insured under the policy, and we have previously found that this exclusion does not violate public policy.

Appellant claims that the only reason why she is barred from recovery would be because she unknowingly chose to join in a policy of insurance with her husband rather than ordering a separate policy herself. Appellant's knowledge,

**6.** We hesitate to address this argument. This argument is buried within one of appellant's two arguments and is clearly distinct from either argument. Appellant has failed to comply with Pa.R.A.P. 2119(a):

> **(a) General rule.** The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed— the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

However, as appellee has fully responded to appellant's argument and the argument is presented in a comprehensible fashion, our review is not hindered and we address its merits. We also note that appellee's brief has failed to comply with the Rules of Procedure in this respect.

however, has no legal relevance to the issue at hand. Appellant's Complaint asks only for a declaration that the exclusion violates public policy. Either the exclusion violates public policy or it does not. What appellant is essentially arguing is that it is against public policy for a married couple or a family to purchase a single policy of automobile insurance for their various automobiles and in exchange, be treated as a unit for liability purposes. As indicated by *Linder, supra,* and the law in this area, this is simply not true.

We emphasized in *Wolgemuth* that one of the legislature's purposes in enacting the MVFRL was to reduce the cost of purchasing motor vehicle insurance. Many married couples and families would rather attain lower insurance rates and, in exchange, sacrifice the ability to attain underinsurance coverage under a non-accident vehicle. Appellant asks us to rewrite the MVFRL under the guise of "public policy" with the inevitable result that insurance rates will rise for a married couple or family which has chosen to insure all their vehicle under one policy. *See Wolgemuth, supra,* 370 Pa.Super. at 63–64, 535 A.2d at 1151-2.[7]

We affirm.

---

7. We do not have before us a situation where it is alleged that insurance companies have colluded to refuse to issue separate policies to married couples or family members.