**ALLSTATE INSURANCE COMPANY, Plaintiff**

v.

**Pamela E. LEITER, Administratrix of The Estate of Brent A. Leiter, deceased, Defendant.**

No. 04:03–CV–0948.

United States District Court, M.D. Pennsylvania.

Feb. 23, 2004.

Christopher M. Reeser, Marshall, Dennehey, Warner, Coleman and Goggin, Williamsport, PA, for Plaintiff.

John R. Bonner, Joseph F. Orso, III, Casale & Bonner, P.C., Williamsport, PA, for Defendant.

## MEMORANDUM AND ORDER

JONES, District Judge.

This is Motion for Judgment on the Pleadings filed by the plaintiff, Allstate Insurance Company ("Plaintiff" or "Allstate"), which seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.*, that it is not obligated to pay underinsured motorist benefits to the Estate of Brent A. Leiter pursuant to an insurance policy issued to Charles D. Leiter.

This Court has jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.

For the reasons that follow, we hold that Allstate is not obligated to pay benefits to the Estate of Brent A. Leiter. Accordingly, we shall grant the motion for judgment on the pleadings.

## *PROCEDURAL HISTORY:*

Allstate initiated this action on June 9, 2003, by filing a declaratory judgment complaint. On July 17, 2003, Allstate filed a motion for judgment on the pleadings and supporting brief. The defendant, Pamela E. Leiter, Administratrix of the

Estate of Brent A. Leiter ("Defendant"), filed a brief in opposition to Allstate's motion on July 25, 2003. This matter became ripe for disposition on August 4, 2003, when Allstate filed a reply brief in support of its motion.

## STANDARD OF REVIEW:

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). In considering a motion for judgment on the pleadings, we must accept all factual averments as true and must draw all reasonable inferences in favor of the non-moving party. See U.S. Fidelity and Guar. Co. v. Tierney Assoc., Inc., 213 F.Supp.2d 468, 469(M.D.Pa.2002)(citing Society Hill Civic Association v. Harris, 632 F.2d 1045, 1054(3d Cir.1980)). "A party moving for judgment on the pleadings under Rule 12(c) must demonstrate that there are no disputed material facts and that judgment should be entered as a matter of law." Id. (citing Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 290–91 (3d Cir.1988); see also Institute for Scientific Info., Inc. v. Gordon & Breach, Science Publishers, Inc., 931 F.2d 1002, 1005(3d Cir.1991)).

Here, there is no dispute as to the facts alleged within the Complaint and Defendant agrees that no additional facts need be disclosed in order to resolve the issues before us.

## STATEMENT OF RELEVANT FACTS:

On March 11, 2001, Brent A. Leiter ("Decedent" or "Leiter") and Andrew J. Guizio ("Guizio") were occupants of a Chevrolet Baretta owned by Brent Leiter which was involved in a one car motor vehicle accident. Both men died as a result of injuries sustained in the accident.

The Chevrolet Baretta, along with three other automobiles, was covered by an insurance policy issued to Charles D. Leiter, Brent Leiter's father, by Allstate. The policy provides for $100,000.00 of bodily injury liability insurance coverage, for $100,000.00 of underinsured motorist coverage and for stacking of the vehicles insured under the policy.

Subsequent to the accident, the Pennsylvania State Police conducted an investigation regarding which occupant of the car was driving at the time of the accident. The investigation was inconclusive. The Administratrixes of the Estates of Brent A. Leiter ("the Estate of Leiter") and Andrew J. Guizio ("the Estate of Guizio") each presented claims of bodily injury liability insurance coverage to Allstate claiming that they were entitled to the proceeds of the policy covering the vehicle. The Estate of Leiter insisted that Guizio was driving at the time of the accident and the Estate Guizio argued that Leiter was driving at the time of the accident.

On April 8, 2002, in light of its position as a mere stakeholder in the dispute between the Estate of Leiter and Estate of Guizio, Allstate filed a complaint in interpleader against both the Estate of Leiter and the Estate of Guizio, tendering its $100,000 bodily injury limit of liability to the Court. The Estates were able to reach a mediated settlement in the action and agreed that the Estate of Leiter would receive $57,500 from the liability insurance policy, and that the Estate of Guizio would receive $42,500 from the policy.

After the settlement was reached, the Estate of Leiter presented a claim to Allstate for underinsured motorist ("UIM") benefits from the same policy that the Estate had received $57,500 in liability insurance benefits. Allstate denied the claim and this lawsuit ensued.

## DISCUSSION:

Allstate seeks a judgment from this Court that the Estate of Leiter is not entitled to UIM benefits under the policy it issued to Charles Leiter because the

vehicle occupied by Decedent at the time of the accident does not meet the definition of an "underinsured auto." We assume for purposes of this motion, as have the parties, that Guizio was the driver of the vehicle owned by Decedent at the time of the accident and that Guizio was driving the vehicle with Decedent's permission. As such, Guizio was insured for liability as a permissive operator of the vehicle. (*See* Compl. Ex A at 5).

■ Because we are exercising diversity jurisdiction over this claim, we must apply the substantive law of the state in which we sit. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188(1938). We will, therefore, apply Pennsylvania law as it applies to insurance coverage. In interpreting the terms of an insurance contract, the court must "attempt to effectuate the intent of the parties as manifested by the language of the written instrument ... [and must] generally enforce the clear, unambiguous terms of the policy." *Nationwide Mut. Ins. Co. v. Cosenza,* 258 F.3d 197, 206(3d Cir.2001)(internal citations omitted). While the insured bears the burden of establishing coverage under an insurance policy, the insurer carries the burden of "establishing the applicability of an exclusion in an insurance contract." *Id.*

The relevant provisions of the insurance policy provide as follows:

An underinsured auto is:

A **motor vehicle** which has bodily injury liability protection in effect at the time of the accident, but its limit for bodily injury liability is less than the damages the insured person is legally entitled to recover.

An underinsured auto is not:

1. "Resident" is defined as "a person who physically resides in **your** household with the intention of continuing residence there. **Your** unmarried dependent children temporarily

2. A **motor vehicle** insured for bodily injury liability under Part 1 of this policy.

4. A **motor vehicle** owned by, or furnished or available for the regular use of **you** or any **resident** relative.[1]

(Compl. Ex. A at 14)(emphasis in original). We refer to the exclusions cited above as the "dual recovery exclusion" and the "family car exclusion", respectively.

■ As to the dual recovery exclusion, Part 1 of the policy refers to coverage for Automobile Liability Insurance, Bodily Injury Liability and Property Damage. There is no dispute that the vehicle that Decedent occupied at the time of the accident was insured for bodily injury liability under Part 1 of the policy. Because this is the case, we hold that the vehicle occupied by Decedent at the time· of the accident does not qualify as an underinsured auto under the Allstate policy.

With regard to the family car exclusion within the policy, the parties agree that Decedent was the son of and resided in the same home as the named insured of the Allstate policy. As such, Decedent fit the definition of a resident relative at the time of the accident. Based on the fact that the Chevrolet Baretta was owned by a resident relative, the family car exclusion provision of the policy also precludes a finding that the vehicle involved in the accident qualifies as an underinsured auto.

In the Answer to the Complaint, Defendant asserts that she is not seeking UIM benefits for the vehicle involved in the accident, but is instead seeking benefits for the three remaining vehicles covered by the Allstate policy. (*See* Def.'s Answ. Compl. ¶ 25). Thus, Defendant appears to

living away form home will be considered residents if they intend to resume residing in **your** household." (Compl. Ex. A at 16)(emphasis in original).

concede that under both cited policy exclusions, the Chevrolet Baretta in particular does not qualify as an underinsured vehicle. There is, in other words, no dispute that the clear and unambiguous terms of the policy bar recovery of UIM benefits for the vehicle involved in the accident. Defendant's argument with regard to the entitlement to benefits consists instead of the following: that the Estate of Leiter is entitled to UIM benefits for the three vehicles that were not involved in the one car accident, and alternatively, that even if the terms of the policy preclude a finding that the Estate is entitled to UIM benefits for those vehicles, the exclusions set forth in the Allstate policy are contrary to public policy and should be invalidated.

Initially, we reject Defendant's argument that the terms of the policy entitle Defendant to UIM benefits for the three vehicles which were not involved in the accident. To reiterate, the dual recovery provision of the policy excludes motor vehicles insured for bodily injury liability under Part 1 of the Allstate policy from the definition of underinsured autos. The three vehicles and the Chevrolet Baretta were each insured under the same Allstate policy, and in accordance with the MVFRL, each vehicle was specifically covered for third party liability. *See* 75 Pa. C.S.A. §§ 1786(a), 1702. Therefore, the three vehicles, like the Baretta, do not qualify as underinsured autos under the clear and unambiguous term of policy.

■ We turn then to consider Defendant's argument that the dual coverage exclusion within the Allstate policy is void against public policy as expressed by the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. §§ 1701, *et seq.* "Contract provisions [that] are not in accord with public policy[ ] and are not advantageous to the insured are particularly subject to a finding of invalidity." *Nationwide Mut. Ins. Co. v.*

*Cosenza,* 258 F.3d 197, 207(3d Cir.2001)(*quoting Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.,* 746 A.2d 1118, 1123 (Pa.Super.1999)). Even clear and unambiguous contract language may be invalidated if conflicts with an applicable statute. *See id.* (*citing Kmonk–Sullivan,* 746 A.2d at 1121). In determining whether an insurance contract provision violates public policy, the Pennsylvania Supreme Court has stated the following:

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy ... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

*Burstein v. Prudential Property & Casualty Ins. Co.,* 570 Pa. 177, 809 A.2d 204, 207 (2002)(*quoting Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006, 1008 (1998)).

The Pennsylvania Supreme Court has, on numerous occasions, expressed the public policy underlying the MVFRL as follows:

> The repeal of the No–Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on the public highways. The legislative concern for the increasing cost of insurance is the public policy that is to be advanced

by statutory interpretation of the MVFRL. This reflects the General Assembly's departure from the principle of 'maximum feasible restoration' embodied in the now defunct No–Fault Act.

*Burstein,* 809 A.2d at 207(internal citations omitted). Inasmuch as the overriding concern of the legislature has been identified as that of the addressing the increasing costs of insurance for consumers, the Pennsylvania Supreme Court has stated that this concern "functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure. Thus, operationally, insureds are prevented from receiving gratis coverage, and insurers are not compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively." *Id.* at 208.

With reference to the rationale behind UIM coverage in particular, the Pennsylvania Superior Court has explained that

[t]he purpose of underinsurance motorist coverage is to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate liability coverage to compensate for the injuries caused by his negligence ... The language of the statute itself suggests that underinsurance motorist coverage requires the existence of at least *two* applicable policies of motor vehicle insurance. See 75 Pa.C.S.A. § 1731(c). Thus, the statute contemplated one policy applicable to the vehicle at fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a second policy, under which the injured claimant is either an insured or a covered person. It is the second policy which the statute contemplates as

the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

*Kelly v. Nationwide Ins. Co.,* 414 Pa.Super. 6, 606 A.2d 470, 474 (1992)(*quoting Wolgemuth v. Harleysville Mut. Ins. Co.,* 370 Pa.Super. 51, 535 A.2d 1145, 1149 (1988)); *see also Cosenza,* 258 F.3d at 209. Recognizing that liability insurance is the most expensive form of insurance coverage in Pennsylvania and seeking to prevent insureds from converting less expensive UIM insurance into the more expensive liability insurance, Pennsylvania courts have repeatedly held that in cases involving single tortfeasor accidents, dual recovery of UIM benefits and liability benefits under the same contract is impermissible. *See Cosenza,* 258 F.3d at 211 (*citing Pempkowski v. State Farm Mutual Auto. Ins. Co.,* 451 Pa.Super. 61, 678 A.2d 398, 403 (1996); *Wolgemuth,* 370 Pa.Super. 51, 535 A.2d 1145 (1988); *Newkirk v. USAA,* 528 Pa. 624, 597 A.2d 1153 (1990); *Sturkie v. Erie,* 407 Pa.Super. 117, 595 A.2d 152 (1991); *Caldararo v. Keystone Ins. Co.,* 393 Pa.Super. 103, 573 A.2d 1108 (1990); *Cooperstein v. Liberty Mut. Fire Ins. Co.,* 416 Pa.Super. 488, 611 A.2d 721 (1992)). This is so because "[t]he rationale behind UIM insurance is inapplicable in single tortfeasor cases, where injured parties can ensure that they have adequate coverage simply by purchasing adequate liability insurance." *Id.* at 212. Indeed, "in single tortfeasor cases the dual recovery exclusion actually promotes the goals of the MVFRL by barring unlawful conversion of UIM coverage to liability coverage." *Id.* at 214. Here, where Defendant is attempting to recover UIM and liability coverage under the same policy for a single car accident involving a single tortfeasor, we hold that the dual recovery exclusion within the Allstate policy does not violate the public policy of the MVFRL.

Our position is supported by the Pennsylvania Superior Court's holding in *Kelly*. In *Kelly*, Clara and Edward Kelly were named policyholders on a single Nationwide policy covering two vehicles. Clara was injured while an occupant in a one car accident when her husband lost control of one of the vehicles covered by the policy. Clara was able to recover the maximum amount of liability coverage on the vehicle involved in the accident. Thereafter, Clara sought to recover benefits under the UIM coverage of the same policy, asserting that the benefits were available on the non-accident vehicle. Nationwide rejected Clara's claim for benefits under a dual recovery exclusion in the insurance contract. The lower court granted Nationwide's motion for judgment on the pleadings and an appeal to the Superior Court followed.

In challenging the lower court's holding that the dual recovery exclusion provision of the policy did not violate public policy, Clara Kelly argued that the provision should be invalidated because "in substantive terms her factual position is identical to that of a separate policyholder." *Kelly*, 606 A.2d at 474(internal quotation marks omitted). The Superior Court rejected Clara Kelly's argument and found that because the claimant and her tortfeasor husband had the ability to purchase that amount of liability coverage they thought was appropriate, "[t]he exclusion in the . . . policy [was] in perfect accord with the purpose of underinsured coverage as elucidated in *Wolgemuth:* to protect the injured claimant against the risk that a tortfeasor over whom the claimant has no control purchases an inadequate amount of liability coverage." *Id.* at 476.

We believe that the facts before us are on point with those in *Kelly:* Decedent "was injured in a single vehicle accident while a passenger in a car driven by a person also insured under the policy, and [Decedent's Estate] seeks to recover UIM benefits under the same policy from which [it has already] received liability benefits." *Id.* at 476(emphasis omitted).

Defendant attempts to distinguish the *Kelly* case by arguing that here, neither Decedent nor the named insured had control over the amount of insurance coverage purchased by Guizio, the professed tortfeasor.[2] We agree with Plaintiff that this argument is without merit. Charles Leiter, the named insured, had control over the amount of liability coverage purchased for vehicles covered under the Allstate policy. As a resident of the same household as the named insured, Decedent met the definition of an insured person under the Allstate policy. (*See* Compl. Ex. A at 5). Guizio, a permissible operator of the insured vehicle, likewise qualified as an insured person under the policy. (*See* Compl. Ex. A at 5). The effect of the foregoing is that in having control over the amount of liability coverage purchased for the vehicle involved in the accident, Charles Leiter also had control over the liability insurance available to Guizio and Decedent at the time of the accident. In insuring the vehicle he owned under his father's policy, Decedent must, at a minimum, be charged with constructive knowledge of the amount of liability insurance recoverable under the policy. Had the bodily injury coverage been unsatisfactory to Decedent, he certainly could have elected to insure his vehicle under a separate policy.[3] This, he did not do.

**2.** In this regard, Defendant argues that dual recovery exclusion operates "not only to eliminate coverage or the vehicle involved but also the damages an insured is legally entitled to receive from an underinsured operator, i.e.,

Mr. Guzio." (Def.'s Br. Opp. Pl.'s Br. Supp. Pl.'s Mot. Judg. Plead. at 2).

**3.** We note that the automobile policy written by Allstate in this case is somewhat unusual,

The fact that both Decedent, the injured party, and Guizio, the presumed tortfeasor, did not have direct control over the amount of liability coverage available under the Allstate policy for the subject vehicle therefore operates as a distinction without a difference in this case. It was certainly foreseeable and within the reasonable contemplation of Charles Leiter, the named insured, and Decedent, the owner of the subject vehicle, that injuries or death could befall individuals by reason of the operation of a vehicle insured under the subject Allstate policy via the negligence of a third-party authorized user. Charles Leiter and Decedent had the ability to assess that risk and purchase the amount of liability coverage they believed to be adequate. We believe it would be against the public policy goals of the MVFRL for either the Leiter's or Decedent's Estate to declare Guizio underinsured under circumstances clearly demonstrating that they themselves placed Guizio in that category. The Estate seeks to convert the more cheaply obtained underinsured benefits provided under the Allstate policy to more expensive liability coverage also provided therein. This violates the spirit, if not the letter, of the MVFRL.

## CONCLUSION:

Because we find that the dual recovery exclusion operates to prevent Defendant from recovering UIM benefits under the Allstate policy, and because we hold that the exclusion does not violate the public policy expressed in the MVFRL, we need not reach the issue of whether the family car exclusion violates public policy. We conclude then that Estate of Brent A. Leit-

er is not entitled to receive underinsured motorist benefits under the policy of insurance issued to Charles D. Leiter and shall accordingly grant Plaintiff's motion for judgment on the pleadings.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Plaintiff's Motion for Judgment on the Pleadings (doc. 6) is granted. The Estate of Brent A. Leiter is not entitled to receive underinsured motorist benefits under the policy of insurance issued to Charles D. Leiter.

2. The Clerk is directed to close the file on this case.

in that it insures an automobile (the Decedent's) owned by someone other than the named insured (Charles Leiter). We presume that this was accomplished for the purpose of cost saving, recognizing that it was undoubtedly less expensive to pick up the Decedent's automobile on the Leiter policy than to issue

two separate policies. However, the Estate of Leiter now seeks in effect to have it both ways. Having joined the Leiter policy, the Estate nonetheless argues that we should treat the Decedent as being a separate policyholder with respect to the underinsured coverage.